IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ------------------------------------------------------- : | |
| MICHAEL W. HOUT, et al., : | CASE NO.  1: 04 CV 1127 |
|  : | |
| Plaintiffs, : | |
|  : | ORDER GRANTING DEFENDANTS' |
| -vs- : | JOINT MOTION (Doc. 173) TO STRIKE |
|  : | PORTIONS OF THE DECLARATIONS |
|  : | OF PLAINTIFFS' TROY BENICK, |
| CITY OF MANSFIELD, OHIO, et al., : | PETER A. NEUMANN, AND LEWIS |
|  : | WORKMAN FILED IN OPPOSITION TO |
| Defendants. : | DEFENDANTS' MOTIONS FOR |
| ------------------------------------------------------- : | SUMMARY JUDGMENT. |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Defendants City of Mansfield, Ohio ("the City"), Angelo Klousiadis, F.L. Fisher (the "Mansfield Defendants"), AFSCME Council 8 and AFSCME Local 3088 (the "Union Defendants"), and Carline Curry ("Ms. Curry") (collectively, "Defendants") move this Court to strike portions of the declarations of Plaintiffs'[1] Troy Benick, Peter A. Neumann and Lewis Workman filed in opposition to Defendants' motions for summary judgment (Docs. 157, 162, 163).  Plaintiffs issued a response in opposition.  (Doc. 176).

Defendants jointly put before the Court specific objections to the Declarations of Plaintiffs Troy Benick, Peter A. Neumann, and Lewis Workman.  These Declarations

---

[1]Collectively the Plaintiffs are Michael W. Hout, Jeff Gibson, Troy Benick, Peter Neumann, Lewis A. Workman, Tyler Merritt, Jr., and Miles H. Jessee.

accompanied the Plaintiffs' Opposition to Defendants' Motions for Summary Judgment. Defendants jointly move the Court to strike the following statements:

1. Paragraphs 11 and 14 of the Declaration of Troy Benick in Opposition to Defendants' Motions for summary Judgment.

2. A portion of paragraph 6 and all of paragraphs 8 and 9 of the Declaration of Plaintiff Peter A. Neumann in Opposition to Defendants' Motions for Summary Judgment.

3. Paragraphs 5 and 6 of the Declaration of Lewis Workman in Opposition to Defendants' Motions for Summary Judgment.

The Defendants rely on three separate arguments in urging the Court to strike the offending statements.  Specifically, the Defendants maintain that paragraph 11 of Benick's Declaration and paragraph 8 of Neumann's Declaration contradict prior sworn testimony and contradict this Circuit's position in Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986).  Further, the Defendants argue that paragraph 14 of Benick's Declaration, portions of paragraph 6 and all of paragraph 9 of Neumann's Declaration, and paragraph 5 of Workman's Declaration are not based on personal knowledge and must be stricken pursuant to Fed. R. Evid. 602.  Finally, the Defendants assert that portions of paragraph 6 and all of 9 of Neumann's Declaration, and paragraph 6 of Workman's Declaration should be stricken as impermissible hearsay in violation of Fed. R. Evid. 801(c) and 802.

The Court addresses each of these disputed statements as they pertain to the Defendants' arguments to strike: contradicts prior sworn testimony; not based on personal knowledge under Rule 602; and, inadmissible hearsay under Rules 801(c) and 802.

**Declarations Contradict Prior Sworn Testimony**

The law in this Circuit does not countenance a party's use of an affidavit to contradict prior deposition testimony.  In Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986), the Circuit Court upheld that rule on the grounds that

> [i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his [or her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

In short, the rule guards the fidelity of the judicial process for evaluating dispositive motions.

The Defendants claim the fidelity of the judicial process is jeopardized in two instances: Paragraph 11 of Benick's Declaration and paragraph 8 of Neumann's Declaration.

First, in his Declaration, Mr. Benick maintains:

> In November 2004 Ms. Curry hung up the phone and yelled 'god damn mother fuckers wanna be fuckin around . . . I shoot 'em!!!'  I reported this threat to Mr. Kulda but he did nothing.

Benick Declaration ¶ 11.  However, in several instances, Mr. Benick's earlier deposition testimony unequivocally places all of Ms. Curry's alleged threats prior to the end of the 2003 calendar year.

The Plaintiffs maintain Mr. Benick's deposition testimony distinguished between generalized death threats made by Ms. Curry, which occurred later in time, and specific threats Ms. Curry made toward Mr. Benick, which occurred earlier in time.  (Doc. 176, pp. 2-8).  However, the deposition testimony indicates that Mr. Benick did confine Ms.

-3-

Curry's general and specific threats to no later than 2003. (Deposition of Mr. Benick, pp. 156-58, 160-165, 223-26, 468-73). Because the Plaintiffs' argument is unavailing, the Court will strike paragraph 11 of Benick's Declaration as in conflict with his prior sworn deposition testimony.

> Second, paragraph 8 of Neumann's Declaration asserts the following:
>
> I reported the threat by Ms. Curry at the time clock to the City of Mansfield management team in addition to Mr. Lemaster who stated that he had personally witnessed the threat. I also reported the cursing accusations, and yelling by Ms. Curry to members of management of the City of Mansfield. I further reported the comments about 'lying while male devils' and 'better off with female employees' to the management at the Wastewater Treatment Facility. I specifically reported these actions and comments by Ms. Curry to Otto Kulda and Angelo Klousiadis. I also attended a meeting with management concerning these issues.

Neumann's Declaration ¶ 8. Mr. Neumann's prior deposition clearly indicates that he did not report Ms. Curry's alleged threats to "any of the administration at the City of Mansfield" because he did not "see the point." (Neumann Deposition, pp. 48-50). As this prior sworn testimony stands in direct contradiction to the declaration conveyed in paragraph 8 the Court will strike paragraph 8 of Neumann's Declaration.

**Declarations Made Without Personal Knowledge**

Pursuant to Fed. R. Evid. 602,

> a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

Personal knowledge may be proved by the witness's own testimony, but he or she "must still set forth a factual basis for [the] claim of personal knowledge." Hilgraeve,

-4-

Inc. v. Symantec Corp., 271 F. Supp.2d 964, 974 (E.D. Mich .2003) (citing Davis v. City of Chicago, 841 F. 2d 186, 189 (7th Cir. 1988)). While the threshold for admitting testimony under Rule 602 is low, US v. Franklin, 415 F.3d 537, 549 (6th Cir. 2005), the witness must still set forth a factual basis for the claim of personal knowledge of the matter in question. See Davis v. City of Chicago, 841 F.2d at 189 (finding that the plaintiff's "conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter"). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Id.

The Defendants maintain that paragraph 14 of Benick's Declaration, a portion of paragraph 6 and all of paragraph 9 of Neumann's Declaration, and paragraphs 5 and 6 of Workman's Declaration violate the strictures of Rule 602. The Court will examine each objection in turn.

First, Mr. Benick testifies in ¶ 14 of his declaration as follows:

> In February 2005 Mr. Kulda told me that he had told Mr. Klousiadis that Ms. Curry was harassing me and that Tyler Meritt had witnessed it. Mr. Kulda said that Mr. Klousiadis responded "Of course they will stick together they are in a lawsuit together." Mr. Kulda said that he also told Mr. Fogt the same information who said "that is more he said-she said bullshit."

Benick Declaration ¶ 14. Mr. Benick's Declaration in ¶ 14, on its face, admits of no personal knowledge of the conversation between Mr. Kulda and Mr. Klousiadis nor of the statements made between Mr. Kulda and Mr. Fogt. Paragraph 14 thus falls outside the ambit of Rule 602. Accordingly, Defendants' objection is well taken, and the Court

finds the statement in ¶ 14 of Benick's Declaration is insufficient to establish that he had personal knowledge of the related conversation.

Defendants next object to a portion of paragraph 6 and all of paragraph 9 of Neumann's Declaration. These allegedly offending statements declare as follows:

> Mr. Lemaster at that point responded with a statement that he could not believe that Ms. Curry would make a threat like that, especially since she had just been told by city officials to stop making threats. Ms. Curry walked away and Mr. Lemaster and the other employees proceeded to explain the part of the conversation that I had missed. Mr. Lemaster explained that Ms Curry had been called 'uptown' by higher management earlier that day and had been verbally told not to threaten employees at the Wastewater Treatment Facility. Mr. Lemaster stated that, before I had walked up to the group, Ms. Curry had told the group that she wanted Ted Lee to go to Glen's in Shelby, Ohio and 'get me a M-16 or AK-47 so that I can shoot all of you all.' It was the latter part of the conversation that I personally overheard. Glen's is a gun shop in Shelby, Ohio. Ted Lee also reported at that time to Mr. Lemaster, a member of the management at the Wastewater Treatment Facility, that she had seen him in the parking lot just before this threat and asked him, 'Ted, do I scare you?" Mr. Lee reported to Mr. Lemaster and the rest of us standing there that Ms. Curry also made a 'gun' out of her fingers, pointed it at Mr. Lee, and said, 'bang, bang.' I am not aware of any immediate action taken by Mr. Lemaster or by the City of Mansfield regarding the threats by Ms. Curry that he overheard or the threat by Ms. Curry that was reported to him by Mr. Lee.

Neumann Declaration ¶ 6.

> I am aware of situations where Ms. Curry threatened to shoot other employees, including Troy Benick and Tyler Merritt. However, my knowledge of these threats by Ms. Curry are based upon what I was told by other employees and not based upon what I personally observed.

Neumann Declaration ¶ 9.

By Mr. Neumann's own admission neither his Declaration in ¶ 9, nor that portion of ¶ 6 bearing on all statements prior to the "end of a conversation between Ms. Curry and a group of employees," rests on the firm basis of personal knowledge. Accordingly, this Court will strike ¶ 6 in its entirety and all portions of ¶ 9 that rely on alleged remarks

made by Ms. Curry or Mr. Lee for which Mr. Neumann has, admittedly, no basis for

personal knowledge pursuant to Rule 602.

Finally, the Defendants object to paragraphs 5 & 6 of Workman's Declaration as

lacking a basis in personal knowledge.  In paragraph 5 Mr. Workman declares:

> When Plaintiff Troy Benick transferred out of the Wastewater Treatment Plant, he was replaced by a female employee, Deb Perry.  Ms. Curry treats this female employee differently than male employees.  Unlike with the male employees, Ms Curry does not constantly check the work of Ms. Perry, does not make her re-do work and does not criticize her work.  Further, Ms. Curry does not yell, scream or curse at Ms. Perry.

Workman's Declaration ¶ 5.

In paragraph 6 Mr. Workman declares as follows:

> At one point in time, Ms. Curry and I saw the same psychiatrist, Dr. Vocal, who is now deceased.  Dr. Vocal treated Ms. Curry when she was institutionalized by the City (which the City disputes).  Because I had sought treatment Dr. Vocal on two separate occasions, for thirty days each, we became friends.  After he treated Ms. Curry, he told me she was dangerous. To watch out for her and not to work with her if possible.  Dr. Vocal told me that Ms. Curry was in danger to herself and to others because she is schizophrenic.  He said that if she hurt herself or someone else she may or may not realize what she is doing and she may or may not care what she was doing.  Dr. Vocal said that he also provided this information to the City, who picked her up from the hospital.

Workman's Declaration ¶ 6.

Mr. Workman has cited no evidence to support his conclusory statement that he

has personal knowledge of the alleged interactions between Ms. Curry and Ms. Perry

addressed in ¶ 5.  Mr. Workman admits to working an entirely separate shift form Ms.

Curry and Ms. Perry at the Wastewater Treatment Plant.  (Workman Deposition pp. 33,

34, 41, 265).  Further, as it pertains ¶ 6, Mr. Workman has not established a foundation

by which he can reasonably assert personal knowledge of the treatment Ms. Curry

-7-

allegedly received from the now deceased Dr. Vocal.  Accordingly, Defendants'' objections to ¶¶ 5 & 6 are well taken, and the Court finds the statements insufficient to establish Ms. Workman's personal knowledge of the conversations to which he was not privy.

### Declarations Contain Inadmissible Hearsay

Finally, on the grounds of inadmissible hearsay the Defendants urge this Court to strike a portion of paragraph 6 and all of paragraph 9 of Neumann's Declaration and paragraph 6 of Workman's Declaration.  This Court has already addressed in this Order whether these specific declarations run afoul of Rules 602's requirement of personal knowledge.

In this instance Defendants further maintain these statements are hearsay as "a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  See also Fed. R. Evid. 802.  Defendants note that in ¶ 6 Mr. Neumann rests his declaration on events as described to him by Ed Lemaster, in ¶ 9 Mr. Neumann makes his declaration on the basis of events as described to him by "other employees," and in ¶ 6 Mr. Workman discusses statements allegedly made by Dr. Vocal to him regarding Ms. Curry.  (Doc. 173).

Plaintiffs maintain these statements are not inadmissible hearsay, but are admissions by party-opponents pursuant to Fed. R. Evid. 801(d).  Rule 801(d)(2) outlines the parameters of admissions by party opponents:

The statement is offered against a party and is (A) the party's own

> statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Fed. R. Evid. 801(d)(2). Plaintiffs rely upon <u>Jacklyn v. Schering-Plough Healthcare</u>, 176 F.3d 921 (6th Cir. 1999) for their position that these statements, relaying third-party conversations, were made by individuals within the scope of employment with the City of Mansfield. (Doc. 176 p. 9).

Predicated on the decision in <u>Jacklyn</u>, the Court finds the statements in dispute are not admissions by party opponents as they were not made within the scope of employment. In <u>Jacklyn</u> the Sixth Circuit explained that under "Fed. R. Evid. 801(d)(2)(D), a statement is not hearsay if it is offered against a party and is 'a statement by the party's agent or servant concerning a *matter within the scope of the agency or employment*, made during the existence of the relationship.' " <u>Jacklyn</u>, 176 F.3rd at 927 (emphasis in original). In <u>Jacklyn</u> the Court found that statements made by managers to the plaintiff did not concern matters within the scope of their agency or employment. In so finding the <u>Jacklyn</u> concluded "[t]here is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer. The test is whether the statement concerns a matter within the scope of the agency or employment." 176 F.3d at 927

This Court does not find the statements made either by Mr. Lemaster to Mr. Neumann or by Dr. Vocal to Mr. Workman to comprise admissions by party-opponents pursuant to Rule 801.  Neither Mr. Lemaster nor Dr. Vocal were making statements concerning "a matter within the scope of [their] agency or employment."  Accordingly, the Court will strike a portion of paragraph 6 and all of paragraph 9 of Neumann's Declaration and paragraph 6 of Workman's Declaration as inadmissible hearsay.

**Conclusion**

For the foregoing reasons, the Defendants' Joint Motion to Strike Portions of the Declarations of Plaintiffs Troy Benick, Peter A. Neumann, and Lewis Workman filed in Opposition to Defendants' Motions for Summary Judgment is granted.

IT IS SO ORDERED.

  /s/Lesley Wells  
UNITED STATES DISTRICT JUDGE

Dated: 3 April 2008